# ANDREW WIERENGO v. THE AMERICAN FIRE INSURANCE COMPANY OF PHILADELPHIA.

*Fire insurance—Conditions of policy—Waiver—Burden of proof—Evidence.*

1. The plaintiff in a suit upon an insurance policy has the burden of showing knowledge on the part of the company, at the time of the issuance of the policy, of the existence of a mortgage upon the insured property, the policy providing that it shall be void if the property be so incumbered.

2. When the date of a transaction is positively fixed by the evidence of one who was a party to it, the jury cannot be permitted to guess or surmise or conjecture that the transaction took place at another time from the testimony of one who was present, but who cannot tell when it occurred.

3. Where no written application for insurance is made, or any terms of the policy agreed upon by parol except the amount of the insurance, the insured is chargeable with knowledge that the policy he receives contains the contract binding upon him as well as the insurer, and that it contains the usual terms of such instruments.

4. An insurer is not required to inquire into the condition of the title to the insured property, or to inform the insured of all the conditions and terms of the policy to be issued, or to read it to him, or inform him of its contents; and, when the policy is accepted without objection, the insured is bound by its terms, unless the same are waived by the insurer.

5. The province of this Court is to pass upon questions raised and determined in the court below; and it would be manifestly unfair to discuss and determine questions raised for the first time in the briefs of counsel, and to which neither the evidence nor the attention of the trial court was directed.

Error to Muskegon. (Dickerman, J.)     Argued November 24, 1893.     Decided February 6, 1894.

*Assumpsit.*     Defendant brings error.     Reversed.     The facts are stated in the opinion.

*M. V. & R. A. Montgomery,* for appellant.

*Stephen H. Clink,* for plaintiff.

GRANT, J.  Plaintiff is the assignee of a policy of insurance upon a stock of merchandise issued to Mary E. Pearson, and brought suit thereon for loss by fire.  Charles A. Pearson, the husband of Mary, was her general agent, conducted her business, and applied for and obtained the policy of insurance sued upon.  The application was verbal.  No terms of the contract for insurance were ever mentioned between Mr. Pearson and the defendant's local agent, Mr. White, except the amount, which was fixed at $1,000.  Mr. White kept blank policies of the defendant, which he was authorized to fill up and deliver, making daily reports to the company, and which were valid from the time of delivery to the insured until canceled by the company.  Upon the receipt of the daily report by the defendant the policy was confirmed.  It was a Michigan standard policy, adopted by the insurance-policy commission under chapter 137, How. Stat.  The policy was issued, November 3, 1891, for one year.  The fire occurred July 7, 1892.  Plaintiff's assignor had had insurance with Mr. White for several years, but whether she had been insured with the defendant before she did not know.  Mr. White also did not know whether the previous insurance had been with the defendant, but thought it had.  Upon receipt of the policy, neither the insured nor her agent read it, and did not read it until after the fire occurred.  It provided that if the property was, at the date of the policy, or should become, incumbered by a chattel mortgage, it should be void.  It also provided that—

"If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee, or of any person or corporation having an interest in the subject of

insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached, or appended hereto."

"*This policy is made and accepted subject to the foregoing stipulations and conditions,* together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto; and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions *no officer, agent, or representative shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written or attached hereto;* nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

Mrs. Pearson had placed a chattel mortgage upon the stock September 1, 1891, for $1,297.23. Neither the defendant nor its agent, White, had any knowledge of the existence of this mortgage at the time the policy was issued. It is insisted by plaintiff's counsel that there was some evidence of such knowledge, sufficient to render it a question of fact for the jury to determine. We cannot concur with the learned counsel. Mr. White, the local agent, testified positively that he had no such knowledge. Mr. Pearson, the husband of the insured, testified that at the time the application was made and the policy issued nothing was said about this mortgage, but that a month or more after it was issued Mr. White came to him with a collection against Mrs. Pearson; that he told Mr. White he could not then pay the claim, and that he had had to give a chattel mortgage on the stock. Being asked why he did not tell White about the mortgage, he replied:

"I didn't suppose it made any difference. It was insured before, year after year, the same way. I didn't suppose it

made any difference. I didn't think it was necessary, because I didn't know any different. He (White) never told me any different."

Robert Pearson, the insured's son, testified that he heard the conversation between White and his father when White came to collect a claim, and stated it substantially the same as did the father. The son did not know when the conversation took place with reference to the issuing of the policy. Being asked how long it was after the mortgage was given, he replied:

"Well, I should say it was a month or six weeks after then. I can't say exactly. Perhaps a month afterwards, may be more."

The court instructed the jury as follows:

"1. If you are satisfied from a fair preponderance of the evidence that Mr. Pearson in no way misled the agent, the agent didn't ask him or inquire of him about whether there was any incumbrance upon the property or not, and he (Pearson) didn't know that it was necessary to inform the agent about the mortgage, didn't know of the existence of this clause in the policy, and didn't read the policy, and it was not read to him, and acted in good faith, and the agent, by fair diligence or inquiry, might have known of that fact, the existence of the mortgage would not be an impediment to recovering in this case.

"2. If Mr. White, when he issued the policy and took the premium, knew that the mortgage was in existence, then the company would be estopped by that knowledge from making the defense (that the mortgage invalidated the policy), and the plaintiff would have a right to recover, notwithstanding the mortgage."

1. The court should have instructed the jury, as requested, that the property was covered by a chattel mortgage at the time the policy was issued; that the defendant had no knowledge of its existence; and therefore the policy was void. The burden of proof to show knowledge in the defendant of the existence of the mortgage at the date of the issuance of the policy was upon the plaintiff. Mr.

Pearson, with whom the arrangement for the insurance was made, and who received the policy, testified positively that the conversation with White about the mortgage occurred after the delivery of the policy. His son was present, but cannot fix the date, and cannot tell whether or not it was before the policy was issued. The time of the conversation was material. Mr. Pearson fixed it positively. It is doubtful if the testimony of the son can be dignified by the term "a scintilla of evidence." When the date of a transaction is positively fixed by the evidence of one who was a party to it, the jury cannot be permitted to guess or surmise or conjecture that it took place at another time from the testimony of one who was present, but cannot tell when it occurred. The positive evidence must be held to have conclusively established the date, and it was the duty of the court so to instruct the jury. When but one conclusion can reasonably be drawn from the evidence, it becomes a question for the court, and not for the jury. It was said in a recent case in Massachusetts:

" The view no longer prevails that a party who has the burden of proof can retain a verdict in his favor by pointing to a mere scintilla of evidence, when, on an examination of the whole case, the court can find no substantial evidence to support it. It is not necessary—perhaps not possible—to lay down a precise formula of general application by which to determine whether the evidence in particular cases is sufficient or not. Where there is evidence proper to be weighed, the jury is the proper tribunal to weigh it, subject, nevertheless, to the power in the court to set the verdict aside as against the weight of evidence. But where the court can find no evidence which, in its deliberate and ultimate judgment, is entitled to be weighed, it must say so, and the jury should be instructed in terms that there is no evidence to support the burden of proof which rests upon the party. Evidence which merely raises a suspicion, or a surmise, or a conjecture, is not enough to be entitled to be submitted to the jury." *Hillyer v. Dick-*

*inson*, 154 Mass. 502; *Druse v. Wheeler*, 26 Mich. 196; *Conely v. McDonald*, 40 Id. 150.

2. The first instruction above given finds no support in authority or reason. In this case, where there was no written application, nor any terms of the policy agreed upon by parol except the amount, the insured must be charged with knowledge that the policy he receives contains the contract binding upon him as well as the insurer. He must know that the policy, which is the contract, contains the usual terms of such instruments. He may not lay it aside without reading, and, when he seeks to recover upon it, and finds that under its plain provisions he cannot recover, say: "I did not read it. The insurer did not tell me what it contained. I did not know that it was necessary to tell him about the title and condition of my property, and therefore I am not bound by its terms." Had Mr. Pearson or his principal read the contract,— which he could have done in a few moments,—they would at once have known these plain and important conditions, which the defendant had the clear right to insert, and to make a condition of its validity. Certainly the insured must be held to some degree of· diligence in obtaining knowledge of the contracts to which they are parties. Ignorance will not relieve a party from his contract obligations. The law only relieves him therefrom in cases of fraud, mistake, waiver, or estoppel. An insurer is not required by the law to inquire into the condition of the title to the property insured, or to inform the insured of all the conditions and terms of the policy to be issued, or to read it to him, or inform him of its contents. When received and accepted without objection, he must be held bound by its terms, unless these terms are waived by the insurer. This is the law of contracts, and there is no reason or authority for holding that an insurance contract is an

exception thereto.    A deed is the contract between the grantor and the grantee, although the grantee does not sign it.    Its terms and conditions are binding upon the grantee, and he cannot avoid them except for one of the reasons above stated.    If he accepts a deed without reading it, and there is no fraud on the part of the grantor, or mutual mistake as to its terms, he is bound by it.    If a mortgagee accepts a mortgage without a covenant against prior incumbrances, or if it contains an express provision that it is subject to prior incumbrances, it is binding upon him, unless the covenant against incumbrances was omitted by fraud or mistake.    The same rule applies to insurance contracts.

The case of *O'Brien v. Insurance Co.*, 52 Mich. 131, has no application to the present case.    The policy there contained no provision rendering it void if there was a chattel mortgage on the property.

3. It is now insisted by the plaintiff that the testimony of Mr. Pearson and his son as to the conversation which took place some weeks after the issuance of the policy shows that Mr. White, the local agent of the company, then had knowledge of the existence of the mortgage, and that this was the knowledge of the defendant.    It nowhere appears upon the record that this question was raised upon the trial.    The case certainly was not submitted to the jury upon any such theory.    The province of this Court is to pass upon questions raised and determined in the court below.    It would be manifestly unfair for this Court to discuss and determine questions raised here for the first time in the briefs of counsel, and to which neither the evidence nor the trial court was directed.

Judgment reversed, and new trial ordered.

LONG, MONTGOMERY, and HOOKER, JJ., concurred with GRANT, J.    MCGRATH, C. J., concurred in the result.