WHIPPLE *v.* MICHIGAN CENTRAL RAILROAD CO.

1. RAILROADS — INJURY TO PASSENGER — EVIDENCE — DIRECTING VERDICT.

Plaintiff, a passenger on defendant's railroad, was injured by the train being derailed. Plaintiff contended that the rails spread, due to rotten ties. Her evidence consisted of the testimony of witnesses who counted rotten ties in the vicinity of the accident, and of others that rotten ties were burning on fires kindled immediately after the accident. The defendant produced overwhelming evidence that the ties in use were sufficiently good to make a first-class track, and that the rail had been intentionally removed by some persons for whose acts defendant was not responsible. *Held,* that a verdict should have been directed for defendant.

2. NEW TRIAL — UNJUST VERDICT — PREPONDERANCE OF EVIDENCE.
A new trial should be granted where the verdict of the jury is palpably unjust, and at variance with the great preponderance of the evidence.

3. SCINTILLA OF EVIDENCE — DIRECTING VERDICT.
Where there is at most only a bare scintilla of evidence to establish plaintiff's case, and an overwhelming proof in favor of defendant, verdict should be directed for defendant.

Error to Monroe; Kinne, J. Submitted April 8, 1902. (Docket No. 8.) Decided May 8, 1902.

Case by Sarah A. Whipple against the Michigan Central Railroad Company for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*C. A. Golden* and *Henry Russel* (*Ashley Pond,* of counsel), for appellant.

*E. R. Gilday* and *Willis Baldwin,* for appellee.

HOOKER, C. J. The plaintiff was a passenger upon defendant's railway train, and was injured through an

accident to the train, it having been derailed. The theory of her counsel is that the train left the track by reason of the spreading of the rails. The defendant's counsel assert that the accident was caused by the removal of a rail with ·design to throw the train from the track. The cause went to the jury, and a verdict was ·rendered in favor of the plaintiff, and the defendant has taken a writ of error. The principal questions are: (1) Should the court have directed a verdict for the defendant? · (2) If not, should ·we have granted· defendant's motion for a new trial ?

There is no testimony in this record tending to show that these rails spread, beyond the fact that the train was derailed, the testimony of witnesses who counted the number of ties which they called rotten to the hundred ties upon the roadway in the vicinity, and of others that some rotten ties were burning on fires kindled immediately after the accident.· There was overwhelming evidence that the ties in use were sufficiently good to make a first-class track, and to hold the spikes; that ties do not become unfit for use immediately they begin to rot; and that in ·all railroads, after they have been constructed for a few years, there must be a percentage of ties in decaying condition, from those slightly affected with rot to those which are about to reach the stage where they should be, and are in practice, removed. There was strong and convincing evidence that the rail had been intentionally removed by taking out the bolts and lifting it out of, and over, the projecting U bolts, which remained standing at the joint of the rail; that the outer spikes had been driven down flush with the ties by the flangs of the wheels as they passed over them immediately after leaving the rails at the point where the rail was removed; that the bolts and fish-plates at the point where the solid track ended were uninjured, the threads on the bolts and nuts, which lay near by, being perfect. It was shown by clear and undisputed evidence that immediately after the accident, at the point where it occurred, there were found some tools adapted to the removal of nuts and bolts, the drawing of

spikes, and the lifting of the rail. These tools belonged to another railroad company near by, and had been placed in its tool-house, a mile or so distant, a few hours before the accident, and were found missing the next morning by its men having the tool-house in charge. The house had apparently been broken open during the night. Two suspicious characters were seen, soon after the accident, hastening from the vicinity of the accident towards Toledo, who did not answer when accosted by farmers living near by. There was, at the most, a bare scintilla, if there was anything rising to the dignity, of evidence, that the track was imperfect, or that the rails spread at that point. There was not in the plaintiff's proofs enough of substance to make a *prima facie* case, when standing alone and uncontradicted. See *Conely* v. *McDonald*, 40 Mich. 156; *Wierengo* v. *Insurance Co.*, 98 Mich. 621 (57 N. W. 833).

But if it should be held that it was not error to submit the case to the jury, their verdict was so palpably unjust and at variance with the great preponderance of evidence that the court should not have denied a motion for a new trial.

The judgment is reversed, and a new trial ordered.

MOORE and GRANT, JJ., concurred with HOOKER, C. J. MONTGOMERY, J., concurred in the result. LONG, J., did not sit.