HAMILTON *v.* MICHIGAN CENTRAL RAILROAD CO.

135    95
143  1 42
f143   46

1. RAILROADS—NEGLIGENCE—QUESTION FOR JURY.
   Evidence reviewed, and *held* (GRANT, J., dissenting) to raise a question for the jury as to whether the derailment of a railroad train was caused by the spreading of the rails, due to the rotten condition of the ties.   Distinguishing *Whipple* v. *Railroad Co.*, 130 Mich. 460.

2. SAME—FELLOW-SERVANTS—ENGINEER AND INSPECTOR OF ROADBED.
   An inspector of a railroad bed is not a fellow-servant with a railroad engineer.

3. SAME—DUTY TO TRAINMEN—ROADBED.
   A railroad company must be diligent in maintaining a safe track for its trainmen.

4. SAME—ASSUMPTION OF RISK—SPREADING OF RAILS.
   A railroad engineer does not assume the risk from spreading rails due to rotten ties or failure properly to spike the rails.

5. EVIDENCE—HARMLESS ERROR.
   The exclusion of evidence relating entirely to the liability of defendant was not prejudicial error, where plaintiff obtained a verdict, but complained that the damages were inadequate.

6. SAME—EXPECTANCY OF LIFE—MORTALITY TABLES—ANCESTRY. An expectancy of life beyond that given in the mortality tables cannot be shown by the opinions of experts based upon such tables and the longevity of plaintiff's father and grandfather, whom he resembled.

Error to Monroe; Lockwood, J. Submitted April 9, 1903. (Docket No. 15.) Decided December 1, 1903.

Case by William T. Hamilton against the Michigan Central Railroad Company for personal injuries. From a judgment for plaintiff for an alleged inadequate amount, both parties bring error. Affirmed.

*Willis Baldwin* and *A. W. Weier* (*Washington I. Robinson*, of counsel), for plaintiff.

*O. E. Butterfield* (*Henry Russel* and *Ashley Pond*, of counsel), for defendant.

HOOKER, C. J. The defendant's passenger train left the track near Monroe, Mich., resulting in a bad wreck, and injuring one or more of its passengers, one of whom recovered a verdict, and the case was reviewed by this court. The outline of the circumstances can be found in the opinion filed in that case. See *Whipple* v. *Michigan Cent. R. Co.*, 130 Mich. 460 (90 N. W. 287). The plaintiff in the present case was the engineer of the train, and he recovered a substantial verdict and judgment, from which both parties have appealed; defendant's counsel contending that the court erred in refusing to direct a verdict for the defendant, while plaintiff's counsel allege some errors relating to the question of damages.

The theory of the plaintiff is that the rails spread, either because the ties were rotten and would not hold spikes, or because the sectionmen had failed to spike the rail properly. As an answer to this, the defendant insists that the evidence conclusively shows that the rails did not spread, and that it is conclusively shown that the wreck was caused by the intentional act of trespassers, who drew

the spikes fastening down the rail a few minutes before the accident occurred. It is also said by defendant's counsel that, "according to the theory of the plaintiff, the injury was due to the negligence of the inspectors of the track; that they were fellow-servants of the plaintiff, and no negligence is alleged or shown on the part of the defendant in respect to these inspectors."

The present record is radically different from the former in some particulars, and it required the submission of all the questions of fact mentioned to the jury, unless it be the failure to spike the rails. We think that it does not conclusively appear that the track did not spread, and we are also of the opinion that it was not conclusively shown that the accident was due to the acts of trespassers. There is little evidence, if any, tending to show that the defendant's sectionmen had failed to spike the rails, but the case did not go to the jury upon such a theory, and it need not be further considered. It was plaintiff's claim that the defendant neglected to maintain a safe track, not that the accident was due to a failure to inspect; and, if it were otherwise, the inspector of the roadbed would not be considered the fellow-servant of an engineer in regard to the performance of such a duty, any more than he would be in repairing the road; and we have held that sectionmen are not in fellow service with trainmen in caring for and repairing the roadbed. It was the duty of the master to be diligent in maintaining the track. *Tangney* v. *J. B. Wilson & Co.*, 87 Mich. 455 (49 N. W. 666); *Balhoff* v. *Railroad Co.*, 106 Mich. 606 (65 N. W. 592); *Anderson* v. *Railroad Co.*, 107 Mich. 591 (65 N. W. 585). We think, also, that the court would not have been justified in saying that the risk was assumed by the plaintiff. It follows that the court did not err in refusing to direct a verdict.

The jury having found a verdict for the plaintiff, it is evident that the refusal of the trial judge to admit a plaster cast of a dent in the rails, though erroneous, resulted

in no injury, and therefore would not justify a reversal of the case. It has no bearing on the amount of damages.

If counsel were not permitted to show plaintiff's earning power, any error in the exclusion of the testimony was eliminated by the concession of the defendant's counsel that he had been able to work every day up to the time of the accident. Counsel sought to show an expectancy of life beyond that given in the mortality table, by experts who were to testify to their opinions, taking as a basis the mortality tables, and the hypothesis that the plaintiff resembled his father and grandfather, who lived to advanced ages. We think this testimony was properly excluded. Without passing upon the question of whether the longevity of the father and grandfather was competent evidence, we are agreed that when coupled with the proposition to show by experts the expectancy of life, based upon that testimony and the mortality tables, it was not competent.

A new trial should not be ordered on the other grounds alleged.

The judgment is affirmed.

MOORE, CARPENTER, and MONTGOMERY, JJ., concurred with HOOKER, C. J.

GRANT, J. (*dissenting in part*). I am unable to agree with the opinion of my Brother HOOKER. I think this case is ruled by that of *Whipple* v. *Michigan Cent. R. Co.*, 130 Mich. 460 (90 N. W. 287), involving this same disaster. That case involved a passenger who was injured. This involves the engineer of the train, an employé of the defendant. I have examined the records in both cases, and find no substantial difference. If the *Whipple Case* was rightly decided, I am of the opinion that the same result must be reached in this case. As in that case, so in this, the negligence relied on is the failure to maintain a safe track, on account of the rottenness of the ties, in consequence of which the rails spread and derailed the train.

The conflict in the *Whipple Case* as to the condition of the ties was as sharp and as great as in this. In the *Whipple Case* several witnesses examined the ties at the place of the accident and in the vicinity thereof, and testified that they were very rotten, and that, in their judgment, it was not safe to run trains over them. The prosecuting attorney and the sheriff of the county of Monroe and two other witnesses examined the ties the following day, and gave similar testimony. We said in that case:

"There was overwhelming evidence that the ties in use were sufficiently good to make a first-class track, and to hold the spikes."

The same evidence was produced by the defendant in this case. The plaintiff did not produce any evidence any more convincing than that in the *Whipple Case*. The only difference between his testimony in this case and that produced in the trial of the *Whipple Case* is that plaintiff here introduced a few more witnesses as to the condition of the ties at the place of derailment and in the vicinity. But it is of the same character as that produced in the other case, and is no more convincing. If the result in that case depended upon the rottenness of the ties, it should have been submitted to the jury; but the point was that there was no evidence to show that the rails spread in consequence of this condition. If there is any testimony in this case more than in the other to show that fact, it has escaped my attention. The position of the rail shows that it was not pressed outward, but inward, for it was found lying towards the other rail. The ties at the culvert over which the train ran are conceded to be sound. There were seven ties from the place of the derailment to the culvert. One of plaintiff's witnesses testified that, on the following day, he examined the track after it had been repaired, and he saw flange marks on about half of the seven ties then in place. If this be true, it follows that there were three or four sufficiently sound to put back into the track.

We said in that case:

"There was strong and convincing evidence that the rail had been intentionally removed by taking out the bolts and lifting it out of, and over, the projecting U-bolts, which remained standing at the joint of the rail; that the outer spikes had been driven down flush with the ties by the flanges of the wheels as they passed over them, immediately after leaving the rails, at the point where the rail was removed; that the bolts and fish-plates at the point where the solid track ended were uninjured, the threads on the bolts and nuts, which lay near by, being perfect. It was shown by clear and undisputed evidence that immediately after the accident, at the point where it occurred, there were found some tools adapted to the removal of nuts and bolts, the drawing of spikes, and the lifting of the rail. These tools belonged to another railroad company, near by, and had been placed in its toolhouse, a mile or so distant, a few hours before the accident, and were found missing the next morning by its men having the tool-house in charge. The house had apparently been broken open during the night. Two suspicious characters were seen, soon after the accident, hastening from the vicinity of the accident towards Toledo, who did not answer when accosted by farmers living near by."

The evidence on the part of the defendant upon this point is the same in this case, and is uncontradicted by any evidence of probative force on the part of the plaintiff. It is a physical impossibility that the fish-plates, bolts, and nuts should have been perfect if the accident had happened in consequence of the spreading of the rails. This physical fact is not met by any evidence in this case. It conclusively rebuts any inference that these rails were forced apart by the engine passing over them on account of the rottenness of the ties, and therefore conclusively refutes any presumption that the rails spread. The opinion of experts or of men of experience that, where the ties are sufficiently rotten, the rails will spread, is of no force in the face of this physical fact. It needs no expert testimony to convince any one that, when ties are so rotten that they will not hold the spikes which keep them in place,

the tendency of a train passing over will be to spread the rails. A significant fact also appeared from the evidence in both cases that pounding was heard at the place of the accident shortly before it occurred, and shortly before the two men were seen going away from the scene.

For these reasons, I think the judgment should be reversed, and no new trial ordered. If, however, the majority of the court are of the opinion that a case was made for submission to a jury, I think the case should not be reversed for the errors assigned by the plaintiff. The plaster cast of the dent, which the court refused to admit in evidence, relates entirely to the liability of the defendant. The jury found that the defendant was negligent, and therefore liable. It follows that the exclusion of the plaster cast would not have affected the verdict in this regard.

The other error assigned relates to the measure of damages. Plaintiff showed that he was 49 years of age; that he was unusually strong and healthy; that he scarcely ever lost a day's work; and the amount of wages he was receiving. He was then asked to state the ages of his parents when they died. The court excluded this testimony because it "entered the region of mere speculation." Even were this testimony competent, to what extent his own life and ability to work would be prolonged by the ages of his father and mother is at least problematical. The life tables are based upon the actual experience of men found to be in good health, and whose lives have been insured after examination by physicians. Plaintiff was engaged in an employment requiring good eyesight and physical strength and endurance. There is no evidence as to the length of time engineers are in sufficient health, vigor, and eyesight to perform the important and arduous services required of them. Evidence of the ages of his parents, in my judgment, is of very little value, and, even if competent, its exclusion does not justify a reversal of the judgment, especially where the plaintiff recovered a very substantial verdict, and one which, under

the evidence, a court is not justified in holding was insufficient in amount. But I am not prepared to yield my assent to its competency. In my experience in the practice of the law and upon the bench, I never knew the question to be raised before. We are cited to but one case where such a question was raised. *Chattanooga, etc., R. Co. v. Clowdis*, 90 Ga. 258 (17 S. E. 88). There is neither discussion nor ruling in the opinion of the court. The opinion simply states that error was assigned in allowing "O'Dell, witness for plaintiff, to testify, over objection that the evidence was irrelevant and illegal and tended improperly to influence the jury, as follows: 'I don't know what age his [deceased's] father lived, but he was very old,—a man up in 80 years.'" The syllabus of the case says, "There was no error in admitting or excluding evidence." Such a decision affords but little light on the question.