PARKER *v.* UNION STATION ASS'N.

1. NEGLIGENCE—PERSONAL INJURIES—DEATH — PROXIMATE CAUSE
   —CONJECTURE.
   Where, in an action for negligent personal injuries resulting in
   death, there being no eyewitnesses of the accident, the cir-
   cumstances shown justify legitimate inferences which bring
   defendant's liability within the realm of probability, rather
   than leaving it a mere matter of conjecture, the case is one
   for the jury.

2. MASTER AND SERVANT—INJURIES TO SERVANT—PLACE TO WORK
   —RAILROADS—BLOCKING SWITCHES—NEGLIGENCE.
   In an action against a union station company for injuries to a
   servant resulting in death, alleged to have been caused
   by defective switch blocking, evidence examined, and *held*,
   that the circumstances justified inferences from which liabil-
   ity might arise, and that the case was one for the jury.

Error to Wayne; Mandell, J. Submitted November
11, 1908. (Docket No. 147.) Decided December 14,
1908.

Case by Mary Parker, administratrix of the estate of
Isaac F. Parker, deceased, against the Union Station
Association and others for the negligent killing of plain-
tiff's intestate. There was judgment for defendants on a
verdict directed by the court, and plaintiff brings error.
Reversed.

*Washington I. Robinson* (*Frederic T. Harward*, of
counsel), for appellant.

*Stevens, McPherson & Bills* (*Seward L. Merriam*,
of counsel), for appellees.

HOOKER, J. Plaintiff's intestate was run over and in-
jured by defendant's switch engine while in the employ of
the Union Station Association, and engaged in switching

cars. She sued to recover damages after his death, and, a verdict in favor of the defendant being rendered by direction of the circuit judge, she has appealed.

We understand that the learned circuit judge was of the opinion that upon this record the proximate cause of the accident was a matter of conjecture merely. Plaintiff's theory was that, while engaged in performing his duties as switchman, decedent's foot was caught in a guard rail by reason of defective blocking, and that he was run over before he could extricate it. Defendants contend that the proof conclusively shows that just prior to his injury he was riding on the footboard of the locomotive, and that it is as reasonable to suppose that, in changing from one side of the engine to the other—of which there was some circumstantial evidence—he fell off from the footboard, and was run over, as that he stepped into the dangerous and defective place, and therefore that the cause of the accident is conjectural. Assuming that this was all of the testimony, we are of the opinion that this would be true; but it is not all. There was testimony that, when decedent was found, his foot was firmly wedged in the space between the guard rail and the main rail, the sole and heel pressed down flat, to which defendant's counsel say that it is as reasonable to suppose that the flange of the wheel pressed his foot in there, as that he stepped into it and was caught before being run over.

We find the following testimony:

"When we found his foot was in the guard rail, we tried to loosen it, and could not get it loose. * * * His left foot was injured in the ankle, about here, and up in here. It was broke there between the ankle and the knee, and his right leg was injured up between the knee and the hip. * * * Before we went away, we attempted to take his left foot out of the guard rail, but it was tied, and we could not get it out. * * * The left foot was crushed down between the rail and the guard rail. * * * The man was lying on his back outside of the rail, on the southerly side of the track. His left foot or left leg was severed about in there, about four or five inches above the

ankle. The right leg was cut above the ankle, between the ankle and the knee and between the knee and the hip crushed. That is a partial cut. It was not off.   *   *   * His body was extending crosswise in the same direction that the ties are laid, substantially straight across. * * * From the block; it was right at the end of that nine-inch block where his foot was in.   *   *   *

"*Q.* Now, was the heel down like that?

"*A.* No; the whole foot, the heel, and foot was right down.

"*Q.* The leg was turned, was it?

"*A.* No, sir; it was not.

"*Q.* He was lying on his back?

"*A.* Yes, sir.

"*Q.* And the leg was not turned?

"*A.* No, sir.

"*Q.* The foot was crushed straight down with the man lying on his back, is that the idea?

"*A.* Yes, sir.

"*Q.* As you understand it, the heel was down?

"*A.* Yes, sir.

"*Q.* And the toe up?

"*A.* Yes, sir; the toe down.

"*Q.* The heel was first down, the heel was underneath?

"*A.* The whole foot, the heel and the foot, were right down.

"*Q.* If a man was lying on his back and lying straight, his heel would be down?

"*A.* His foot was caught in there, and kept it down.

"*Q.* Do you know whether his heel was down or not?

"*A.* Yes, sir.

"*Q.* Was it down?

"*A.* Yes, sir.

"*Q.* And the balance of the foot was crushed down on the heel?

"*A.* The balance of the foot was down, too.

"*Q.* Crushed down on the heel?

"*A.* No, sir.

"*Q.* Was it aside of the heel?

"*A.* No; it was right down like that.

"*Q.* And the man lying like that?

"*A.* Yes, sir.

"*Q.* And the legs straight?

"*A.* Yes, sir.

"*Q.* The foot with the heel down, lying in that condition?

"*A.* Yes, sir.

"*Q.* And the foot was crushed down between the guard rail and the rail?

"*A.* Yes, sir. * * * That block was originally about two feet long. The foot was right straight in there between the rail and the guard rail. His foot was fastened between the two rails, the wing of the guard rail and the rail. It was right between the two. The part of his limb outside of the track and away from the part that was fastened between the main rail and the guard rail was about two or three inches away. Part of his leg, from five inches above the ankle, was away from the track. The other part that was to the body, was on the south side of the track. There was another break right there above the ankle. This was where the wheel could pass over. * * * The engine did not move while I was there.

"*Q.* Why didn't it move? His foot was caught in the guard rail. Was anything done or said about its being moved?

" *Mr. Merriam:* I object to what was said.

" *Mr. Robinson:* I desire to show that it was suggested by the engineer that they move the engine and cut the cord off with the engine and the deceased said 'No,' he did not want them to do it.

" *The Court:* That may be shown.

"*A.* Some one said they could run the engine over it and Mr. Parker objected. He said 'No.'

"*Q.* What do you mean by running the engine over it?

" *The Court:* The jury must draw the conclusion.

"*A.* Run the engine over the cords. The engine was not run over it. After that I took a knife and cut the cord."

A witness for the defense stated:

" Mr. Parker's foot was not in the guard rail. I could see his foot laying over the guard rail, on top of the guard rail. The flange of the driver had pressed part of the leg down between the guard rail and the main rail. The foot in the shoe was not fastened between the rail and the guard rail underneath with a little flange that sticks over the main rail and the guard rail. * * * At the time I stopped the engine, Mr. Parker's body was located

practically in the center and between the two drive wheels. His foot was east of the middle of the guard rail, not much east, near the center. I could see the guard rail from the engine. I could see the front end, the east end of the guard rail. After I backed up, I could see the foot where it was between the guard rail and the main rail, after I backed up, if the foot was where it first lay. * * *

"*The Court:* Do you know whether his foot was ever fastened there?

"*A.* No, sir. I know his foot was; that is, not his foot, his foot was out clear, but the wheel had drawn this part down between the guard rail. The location, the way the foot looked to me, it must have been around the ankle that was between the guard rail and the main rail. I suppose the piece down in there hindered them from taking the foot right up with the body. Not the foot. It was pressed down in, but the foot was not run over. I didn't get down to see where the foot was fastened. I did see it."

The surgeon of the Detroit sanitarium testified:

"The left limb was crushed and the right one cut off above the knee. The bones of the left one were broken, and it was taken off in the operating room below the knee five or six inches. * * * It was his right foot that was taken off when he came to the hospital; cut off above the knee about four inches. And the left foot and leg were crushed a good deal. The left leg appeared as though the wheel passed over it diagonally."

While it is true that proof must establish a probability, and where the testimony can be said to be as consistent with a theory that relieves a defendant from liability for the accident, as it is with one involving his liability, there can be no recovery, we have often held that circumstances shown may justify inferences which bring liability within the realm of probability, rather than leaving it a matter of conjecture merely. And, where a judge can see that such inferences may be legitimately drawn, he should leave the question of inference to the jury. *Jones* v. *Railroad Co.*, 127 Mich. 201; *Schoepper* v. *Chemical Co.*, 113 Mich. 586; *Alpern* v. *Churchill*, 53 Mich. 613; *Car-*

*ver* v. *Plank Road Co.*, 61 Mich. 584; *Merryman* v.
*Hall*, 124 Mich. 265, 136 Mich. 297; *De Cair* v. *Rail-
road Co.*, 133 Mich. 583; *La Fernier* v. *Wrecking Co.*,
129 Mich. 596; *Stowell* v. *Standard Oil Co.*, 139 Mich.
24. The surgeon testified to a conversation in which de-
ceased said to him that "he slipped off from the footboard
and got caught under the wheel." This testimony was
not disputed, and was corroborated by testimony consist-
ent with defendant's theory from the engineer and fireman,
and their testimony was uncontradicted. While it may
be said that this testimony of the engineer and fireman, if
believed, showed that the deceased was probably upon
the footboard a very short time before he was hurt,
it is not necessarily inconsistent with the theory that
he jumped off and stepped into the space between the
rails, or that he slipped off, and, in trying to get away
from the engine, stepped into such space, getting his foot
caught. Upon these theories a defective blocking might
be the proximate cause of the injury, and these would be
questions for the jury. Unless, therefore, we should say
that the uncontradicted proof of the admissions of the de-
ceased must be taken as controlling evidence, the case
should have gone to the jury. We do not find it neces-
sary to determine whether direct evidence by way of ad-
missions uncontradicted should as matter of law overcome
the inferences from circumstantial evidence for the reason
last stated, viz., that the evidence of the surgeon and the
admission are not necessarily inconsistent with the claim
that his foot was caught by reason of the defective block-
ing, and that but for this he might have escaped injury if
he did slip off from the footboard. Therefore we must
come back to the simple question of whether the condition
of the foot, if not lacerated, justified an inference that it
was caught between the rails before he was struck by the
wheel, instead of being crowded into the space by reason
of his being struck. Manifestly the position of his body
and the wounds received may have thrown light upon
this question, and, as already intimated, it is our opinion

that the question should have been submitted to the jury. In the foregoing discussion we have acted upon the assumption that there was negligence on the part of the defendants. That was a disputed question of fact. There was testimony tending to show that the statutory requirement as to blocking was not obeyed, which, if true, constituted negligence, and may have justified a recovery if it was the proximate cause of the injury. Counsel urge that plaintiff's theory is improbable and contrary to the great weight of the evidence. What we might say about this were the case here on exceptions to a denial of new trial, we need not say.

The judgment is reversed, and a new trial ordered.

MONTGOMERY, OSTRANDER, MOORE, and MCALVAY, JJ., concurred.