SCHULTE *v.* MICHIGAN CENTRAL RAILROAD CO.

CARRIERS—NEGLIGENCE—DERAILMENT—DEFECTIVE ROADWAY.
    Evidence that the derailment was caused by the spreading of
    rails, that the ties were rotten and the spikes loose, justifies
    the submission of the carrier's negligence to the jury.

Error to Wayne; Murfin, J.   Submitted April 7, 1910. (Docket No. 29.)   Decided July 14, 1910.

Case by Albert Schulte against the Michigan Central

Railroad Company for personal injuries.   A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error.   Reversed.

*Dohany & Dohany*, for appellant.

*J. Walter Dohany* (*Henry Russel*, of counsel), for appellee.

Moore, J.   The plaintiff was a passenger on one of defendant's trains on the night of December 6, 1906, to be carried from Vassar, Mich., to Detroit, Mich.   When the train arrived at a point between Millington and Otter Lake a wreck occurred.   The car in which plaintiff was a passenger rolled down an embankment and plaintiff was seriously injured.   After plaintiff had put in all his testimony, the defendant moved the court to direct a verdict, which the court did, on the ground that plaintiff had failed to introduce sufficient evidence of negligence on the defendant's part to require the court to submit the case to the jury.   Plaintiff bases his only assignment of error on this action of the court.

Plaintiff testified in part as follows:

"The train consisted of engine, tender, baggage car, smoker, ladies' coach, and parlor car, in the order in which I have mentioned them.   Between Millington and Otter Lake, about three and a half or four miles south of Millington, and two or three miles from Otter Lake, we felt the bounding of the cars on the tracks, and I jumped for the hat rack, and the car went over the embankment, and I struck my back to the ceiling.   The coach I was in went over down the embankment, which was 12 or 15 feet deep.

"Q. You say you grabbed for the hat rack.   Then state what occurred.

"A. I grabbed for the hat rack, and I hung on, and the car went over the embankment and I struck my back to the ceiling, and I slipped from the hat rack and I came to in the vestibule—the vestibule to the south.

"Q. Did the car turn over?

"A. Yes, sir.   After we got out of the car we walked north to see what had caused the accident.

"*Q.* How far up north did you go?

"*A.* North about the distance of a block and a half here.

"*Q.* That is, towards Millington?

"*A.* Towards Millington.

"*Q.* What, if anything, did you find there as to tracks and the ties?

"*A.* The east track was spread and the spikes were partially pulled out.

"*Q.* What was the condition of the ties?

"*A.* The ties were rotten.

"*Q.* Did you notice the holes where the spikes were pulled out?

"*A.* Yes, sir.

"*Q.* Just describe what condition those ties were in as to spike holes and rails and everything that you saw.

"*A.* The spike holes were grown larger, loosened by spikes, and the rail had spread, oh, probably five to six inches at the place; maybe only four, and the track did not meet at the east side; that is, the east track the plates had broken and they did not meet.

"*Q.* Did you notice the mark of the flange of the wheel on the ties?

"*A.* The flange marks, yes.

"*Q.* Where did that begin?

"*A.* Where the rail was loose.

"*Q.* Did you examine whether the rail was loose or not?

"*A.* I did.

"*Q.* How far from this place that you describe that condition was it to the place where the cars had turned off and gone down the embankment?

"*A.* Probably 30 rods."

There was considerable other testimony to the same effect. We do not think it can be said, as a matter of law, that defendant was free from actionable negligence. See *Hamilton* v. *Railroad Co.*, 135 Mich. 95 (97 N. W. 392); *Whipple* v. *Railroad Co.*, 143 Mich. 41 (106 N. W. 690); *Parker* v. *Station Ass'n*, 155 Mich. 72 (118 N. W. 733).

Judgment is reversed, and new trial ordered.

McAlvay, Brooke, Blair, and Stone, JJ., concurred.