HENRY BRASSEL v. THE MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.

*Pleading—Amendment of declaration—Carriers—Ejection of passenger—Instructions—Special questions to jury—New trial.*

1. A declaration in a personal injury case alleging, in substance, that the plaintiff purchased a ticket entitling him to a round trip between certain stations, and that, after starting on the return trip, he requested the conductor to give him a lay-over check, or allow him to stop off, at an intermediate station, which request was refused, and, because of plaintiff's inability to pay the additional fare demanded, he was ejected from the moving train and injured, may be amended so as to charge that plaintiff was carried on the outgoing trip as far as said intermediate station, the conductor taking up the outgoing portion of said ticket, and that on the following day plaintiff entered a car of the defendant at said intermediate station to complete the outgoing trip, and, because of his inability to pay the fare demanded for transportation over that portion of the route, he was ejected from the moving train, and injured, etc.; the statute of amendments being broad enough to warrant such action.

2. In a suit against a railroad company for injuries sustained by being unlawfully ejected from one of its trains, the declara-

tion averred that the conductor and a brakeman forcibly ejected plaintiff from and off the moving cars, throwing him with violence from the platform of the cars to the ground, and plaintiff testified that he was pushed or shoved off while the train was in motion. The jury were instructed that unless they should find that the plaintiff was shoved or pushed, *or in some way* forcibly ejected, from the train while it was in motion, as alleged in the declaration and claimed in plaintiff's testimony, he could not recover. And it is held that the jury should not have been left, as they were under said instruction, to find that the plaintiff was "in some way" forcibly ejected from the train while it was in motion, other than that shown by the evidence and alleged in the declaration, but that the instruction should have limited them to the precise manner in which the act was committed.

3. It was error to instruct the jury that if they should find that the conductor, or any other employé of the defendant, acting under the conductor's orders, ejected plaintiff, or compelled him to alight, from the cars while they were in motion, as he testified to, and if he was thereby injured, the defendant was liable, there being no evidence to show that the conductor gave any such instructions or orders.

4. Special questions were submitted to the jury in a personal injury case, covering certain facts necessary to be found in favor of the plaintiff in order to warrant a verdict in his favor. The jury returned a general verdict for the plaintiff, but did not answer the special questions. During a conversation between the court and the foreman of the jury, and after the court had stated that the questions must be answered, and that the jury had better retire for that purpose, the attorney for the plaintiff remarked, in the presence of the jury, that he thought that, technically, the questions were not covered by the verdict, although it practically covered them, to which remark defendant's counsel excepted. The jury then answered the questions in such a way as not to conflict with their general verdict. And it is held that it is manifest that the jury did not answer the questions in the first instance for fear they would interfere with their general verdict, and that the suggestion by plaintiff's counsel at such a time was entirely out of place, and was a clear intimation to the jury to make their answers to the special questions conform to their general verdict.[1]

---

[1] For cases bearing upon the construction of 3 How. Stat. § 7606, which provides for the submission of special questions to the jury, see *Cousins v. Railway Co.*, 96 Mich. 386, and note.

5. While this Court, under its prior decisions, cannot interfere with the discretion of the circuit judge in refusing to grant a new trial where the motion was made before the statute authorizing exceptions to such refusal, and a review thereof on error, went into effect (Act No. 134, Laws of 1893),[1] it can and ought to require that the trial be conducted in strict accordance with the rules of law, and cannot hold that errors such as those pointed out in this case were not prejudicial.

Error to Schoolcraft. (Steere, J.) Argued January 17, 1894. Decided June 16, 1894.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*E. C. Chapin* and *A. H. Bright,* for appellant.

*Hurst & Sullivan* and *J. W. McMahon,* for plaintiff.

GRANT, J. Plaintiff claims that he was unlawfully ejected from a passenger car of the defendant's train while it was in motion, and was injured.

1. In his original declaration, plaintiff alleged that—

"The said plaintiff, after purchasing the said ticket, and on, to wit, the said 19th day of November, went on the cars of the said defendant from Manistique to Hunt's Spur, and afterwards, to wit, entered a car of the said defendant, on one of its passenger trains, to return to Manistique; and, relying upon the representations made by

---

[1] See *Gemberling v. Lazarus,* 100 Mich. 324, holding that said act does not apply where the motion was decided and writ of error issued before the act took effect; and *McRae v. Lumber Co.,* 102 Mich. — (60 N. W. Rep. 967), holding that the act provides that there may be incorporated in the bill of exceptions a record of all proceedings had on the motion for a new trial, including the reasons given by the trial judge in refusing to grant said new trial, and that exceptions may be taken, and error assigned on such decision; that the reasons of the circuit judge for refusing the new trial asked for in this case are not given, and, apparently, he was not asked to give them, and unless the statute is followed in this regard the Court will not review the decision complained of.

the agent of the defendant at the time of the purchase of the said ticket, he requested the conductor to give him a lay-over check, or allow him to stop off, at Whitedale, and proceed to Manistique on the next train, which the said defendant, by its said agent, 'conductor,' absolutely refused to do, and the said conductor refused to carry him unless he would pay a large amount, to wit, 35 cents, as additional fare, which he was unable to do, upon which he ordered him to leave the car, which the plaintiff refused to do, upon which the conductor signaled the engineer to slack the speed of the train, and he, the said conductor, and another agent of the defendant, called a 'brakeman,' seized violently hold of the plaintiff, and with force and violence, and against his will and resistance, not waiting for the said train to stop, and while said train was running at a high rate of speed, to wit, at the rate of 10 miles per hour, forcibly ejected said plaintiff from and off the cars, throwing him with violence from the platform of the cars to the ground, while the cars were so in motion."

The opening of counsel to the jury was based upon this declaration.

The original declaration and the opening statement of counsel were based upon the allegations that plaintiff was lawfully upon defendant's train; that he was in possession of a ticket which entitled him to ride over the portion of the road he was then on; that he was on the return trip; that he asked the conductor for leave to stop over at Whitedale; that the conductor informed him that he could not, without paying 35 cents extra, which would make the regular fare for the trip; and that, refusing to do this, he was ejected from the train before reaching Whitedale,— the station where he desired to stop over. After the plaintiff was sworn, and it was ascertained by his counsel, conceded, and held by the court, that he could not recover upon that declaration, under the testimony which the plaintiff gave, the plaintiff was permitted to amend his declaration by changing the date, the direction, and the train by which he was traveling. The amended declaration showed that he was not a passenger, but a trespasser, upon

another train than the one stated in the declaration, and controlled by a different train crew; that he had given up the outgoing portion of his ticket, and had nothing to show that he was entitled to ride upon the defendant's train. The conductor in charge of the train upon which he went to Whitedale had taken it up, and had not given him a lay-over check. Under the first declaration, he was unlawfully ejected; under the second, he was lawfully ejected, and there was no liability unless he was ejected while the train was in motion. The sole ground of liability, under the amendment, was an act so inhuman and wicked as to be almost beyond belief. The only thing in common between the two declarations is that the manner of ejecting in the one is the same as that in the other. It is argued by the defendant's counsel that the amendment introduced an entirely new cause of action, not permissible under the statute of amendments. There is much force in the contention, but the statute permits amendments "in substance," and is so broad that we are not prepared to hold that the court erred in permitting the amendment.

2. The court instructed the jury that—

"Unless you find, by a fair preponderance of evidence, and of all the evidence, in the case, that the plaintiff was shoved or pushed, or in some way forcibly ejected, from the train while it was in motion, as alleged in his declaration and claimed in his testimony, your verdict must be for the defendant."

The jury should not, in a case of this character, be left, as they were under this instruction, to find that the plaintiff was "in some way forcibly ejected from the train while it was in motion," other than that shown by the evidence and alleged in the declaration. He had stated how he was ejected, viz., by being pushed or shoved off while the train was in motion. The instruction should

have limited the jury to the precise manner in which the act was committed.

3. The court instructed the jury that—

"A defendant railway company is always responsible for the acts of its employés when they are on duty, acting in the line of their employment; and if you should find that the conductor, Snyder, or any other employé of this company, acting under the conductor's orders, ejected Mr. Brassel, or compelled him to alight, from the cars while they were in motion, as he testifies to, and if he was thereby injured, the defendant is liable."

The error in this charge lies in the fact that there is no evidence in the record showing, or tending to show, that Mr. Snyder gave any instructions or orders to the brakeman, or any one else, to push or shove the plaintiff from the train. There is no testimony, outside of the plaintiff's, tending to show that any violence was used. Several witnesses on behalf of the defendant testify that the train had stopped, and that no physical force was used. The plaintiff's own testimony on this point is so contradictory that it is at least questionable whether, as a matter of law, the court should not have directed a verdict for the defendant. In one part of his testimony, he said the conductor pushed him off; in another, "There were two brakemen, or men employed on the train, came along, and pushed me off;" and again, "I got off about two and a half miles from Whitedale."

4. Three special questions were given to the jury, which they were instructed to answer:

"1. Was the plaintiff in the smoking room, next in front of the dining car, when the conductor called for his fare?

"2. Was the train at a stop when the plaintiff left the car?

"3. Did the conductor push the plaintiff from the car to the ground while the train was in motion?"

The jury returned into court with a general verdict,

but without answering any of these questions. Upon the poll of the jury, the following conversation took place:

" *Mr. Hurst:* I would like to call for the special questions.

"*Court:* Have you the special questions?

"*Foreman:* Yes, but they are not signed.

"*Court:* Are they not answered?

"*Foreman:* No, sir.

"*Court:* Have you not taken any action in regard to them?

"*Foreman:* It was talked of.

"*Court:* What do you wish to say in regard to it?

"*Foreman:* That they didn't feel like signing it, for some cause.

"*Mr. Dunton:* The result of this is, then, that it is no verdict at all.

"*Mr. Hurst:* Are they not virtually covered by the verdict?

"*Court:* There would not be any object in special questions, if they were.

"*Mr. Hurst:* We ask that the jury go back, and answer the questions.

" *Court:* These special questions should be answered, gentlemen, and I think you had better retire.

"*Mr. Hurst:* I think, technically, they are probably not covered by the verdict, although the verdict practically covers them.

"*Court:* I hardly think that is a proper suggestion to make.

"*Mr. Dunton:* I take exception to that remark of Mr. Hurst.

"*Mr. Hurst:* I was merely making a remark to the court."

The jury then retired, and returned, answering the first two questions " No," and the third, " Yes."

It is manifest that the jury did not answer the special questions for fear they would interfere with their general verdict. No other conclusion can be drawn from their neglect to answer them until directed by the court to do so. Suggestions by plaintiff's counsel at such a time were entirely out of place, and it was a clear intimation to the

jury to make their special questions conform to their general verdict. Precisely why the jury should believe plaintiff's statement that the conductor pushed him from the train, rather than his other statement, which was equally clear and positive, that the two brakemen pushed him off, is almost beyond comprehension.

It is quite possible that a case might be presented in which we would be justified in holding that these were not prejudicial errors. It is impossible to read the record in this case without coming to the conclusion that the jury utterly ignored the clear weight of the evidence in the case. As already stated, the finding by the jury that plaintiff was ejected from the train while it was in motion is based upon the testimony of the plaintiff alone. His testimony was not consistent, and there is strong evidence which casts doubt upon his credibility. If his testimony be true, then he was thrown from the train while it was running at the rate of 7 or 8 miles an hour, on rough and frozen ground, and if, in consequence of that act, he had been killed, the person or persons who pushed him off would have been guilty of manslaughter. Plaintiff produced only one witness who was in the car with him at the time of the occurrence,—Mr. Hill,—who testified that the train stopped. He said he did not see the transaction, and that, before they started up, some one said they had put a man off the train. The conductor testified that the train stopped, that he got off first, that plaintiff then stepped off, and that no physical force was used. One Woycke, who was section foreman, was near the place at the time, and was not in the employ of the company at the time of the trial, but had gone to farming, testified that the train was standing still when plaintiff got off, that the conductor got off first, and that plaintiff walked up to witness, and talked with him, but made no complaint that he had been pushed off, or that

he was hurt.   One McCorquodale, a fuel inspector for the Weston Furnace Company, was a passenger upon the train, saw the transaction, and testified that the train had stopped, that no violence was used, and that the conductor got off first, and was followed by the plaintiff. One Stroschan was a section man working under Woycke, and testified that the train stopped; that the plaintiff then got off, and talked with Woycke.   One Day, purchasing agent and manager for the Coolidge Fuel & Supply Company, was a passenger, and testified that the train was standing still when the plaintiff got off.   There was nothing tending to impeach these witnesses.   In the face of this evidence, and of the improbability of the plaintiff's story, the jury found that the conductor, Snyder, was guilty of a cowardly and criminal act.

Plaintiff claims to have been injured in one of his knees. He made no claim of injury to those who saw him immediately after, and at once walked four miles to a lumber camp.   His own physician testified that he would eventually get the full motion of his knee joint, but not in less than a year.   His other physicians testified that in their opinion he would always be somewhat lame.   Upon this testimony the jury rendered a verdict of $7,000.

The refusal to grant a new trial upon a verdict rendered upon such evidence is very close to an abuse of judicial discretion.   While this Court, under its prior decisions, cannot interfere with this discretion, it can and ought to require that the trial be conducted in strict accordance with the rules of law, and cannot hold that errors such as those pointed out above were not prejudicial.   The motion for a new trial in this case was made before the statute authorizing exceptions to the refusal to grant such motion, and a review thereof in this Court, went into effect.

The judgment must be set aside, and a new trial ordered.

LONG and HOOKER, JJ., concurred with GRANT, J. McGRATH, C. J., and MONTGOMERY, J., concurred in the result.