COLE *v.* DETROIT ELECTRIC RAILWAY.

STREET RAILWAYS—NEGLIGENCE—INSUFFICIENT EVIDENCE—NEW TRIAL.

> Where a judgment against a street-railway company had no other foundation than the testimony of a girl 10 years old that the plaintiff's intestate, a child 2½ years old, was in front of the car, in plain view of the motorman, when the car started, while her testimony before the coroner's jury was that the deceased was clinging to the side of the car near the wheels, and the motorman testified that the child was not in front of the car, a motion for a new trial should have been granted.

Error to Wayne; Hosmer, J. Submitted October 16, 1902. (Docket No. 70.) Decided January 6, 1903.

Case by George W. Cole, administrator of the estate of Winifred Cole, deceased, against the Detroit Electric Railway and the Detroit United Railway, for the alleged negligent killing of plaintiff's intestate. From a judgment for plaintiff, defendants bring error. Reversed.

Plaintiff's daughter Winifred, 2½ years old, was run over and killed by the defendant's car, which was running north on the easterly one of the two tracks on Fourteenth avenue at the intersection with Harper avenue. The declaration charges that the car had stopped at Harper avenue to let passengers off; that the deceased went upon the track and stood in front of the car while it was standing still, with her hands upon the fender; that she was in plain view of the motorman; and that the motorman, without any warning, started the car and ran over her. It charges gross "carelessness, recklessness, and wantonness" on the part of the motorman in failing to see the child.

The motorman testified that, before stopping his car, he saw the little girl standing at the northwest corner of these

avenues, upon a grass plat between the curbstone and the sidewalk, with her hand against a tree. When the car stopped, she was out of the range of his vision. He swore positively that, when he started, she was not standing in front of the car. After the car had stopped, the deceased ran into the street, across the other track, to the car. No one upon the car saw her or knew of the accident until the car returned, a few minutes later. The car went only two blocks beyond, and then returned. The car was a closed one, with doors on the east side.

The right of recovery is based upon the testimony of one witness for the plaintiff, Mabel Perry. She was eight years old at the time of the accident, and ten at the time of the trial in the court below. Upon the trial she testified that the deceased stood on the track, directly in front of the fender, where she was in plain sight of the motorman. Immediately after the accident an inquest was held before a coroner's jury. Mabel was taken by her uncle before the jury to testify in regard to the accident. She was the sole witness to it, except a little girl five years old. A stenographer took her testimony at the inquest, and the coroner wrote out a statement, which she signed. She then testified positively that the deceased was not in front of the car; that she was on the side of the car, "right near the front wheels," and had hold of something on the side of the car. When her signed statement and the stenographer's minutes were read to her, she did not positively deny any of the statements read to her. To some she said, "I don't remember so testifying;" to some, "I don't think I said it." The following question and answer were read to her from the stenographer's minutes: "*Q.* She tried or had hold of something that was on the side of the car, did she? *A.* Yes, sir." In reply to the question whether she so testified, she said, "I would not say I did not say it." Her written statement, read to and signed by her at the close, and the stenographer's minutes, duly proved, were read in evidence. The coroner, some of the jurors, and a woman,—Mrs. Dibble,—who was present

when she gave her testimony at the inquest, testified positively that she there testified as above. There were six of these witnesses.

The case was submitted to the jury, who found a verdict for the plaintiff. Defendant made a motion for a new trial on the ground that the verdict was against the clear preponderance of evidence. In support of the motion, it filed the affidavit of Mrs. Dibble that, about 20 minutes after the accident, the witness Mabel told her that the deceased "ran out and took hold of the side of the car just back of the fender, and when the car started she tumbled and rolled under the wheels." The motion was denied, exception duly taken, and the ruling of the court is now before us for review, under Act No. 134, Pub. Acts 1893 (3 Comp. Laws, § 10504).

*Corliss, Andrus, Leete & Joslyn,* for appellants.

*J. Walter Dohany,* for appellee.

Grant, J. (*after stating the facts*). The verdict and judgment have no other foundation than the testimony of the witness Mabel Perry. If the testimony given by her at the inquest is true, the defendant is not liable. If her testimony given upon the trial be true, not only is the defendant liable for damages, but the motorman is liable to indictment for manslaughter, — for conduct wholly regardless of human life. If the versions of this accident given by this witness on the two occasions are directly contrary to each other, and there is no reasonable explanation for her change of testimony upon the trial from that upon the inquest, she is unworthy of credence, and a verdict based thereon ought not to stand. To find a verdict for the plaintiff, the jury must have wholly disregarded the testimony of the six disinterested witnesses who testified to what Mabel said at the inquest, and the positive and unequivocal testimony of the motorman that the deceased was not upon the track in front of the car. It is important, therefore, to consider the character of the impeach-

ing testimony.   There is no room for holding that the six witnesses are mistaken in their testimony.   The material part of Mabel's testimony was written out by the coroner, and read to and signed by her.   The stenographer wrote out his minutes by questions and answers, and swore to their correctness.   Four other witnesses swore positively to the same effect.

The verdict cannot be sustained upon any other theory than that these seven witnesses testified falsely.   I find it impossible to disbelieve them.   They are unimpeached by anything in this record.   The witness herself does not deny their statements.   It is therefore established beyond controversy that she did so testify at the inquest, when, as she admitted upon the trial, the occurrence was fresh in her mind.   Besides, the version given by her at the inquest is entirely natural, while that given upon the trial is not. It is unnatural and improbable that the motorman started his car with the girl standing within a few feet and directly in front of him, and in his plain sight.   I cannot consent that persons be deprived of their property or liberty upon such a record.   The declaration is based upon gross, wanton, and reckless negligence.   It can be sustained upon no other theory.   Yet the jury, by wholly disregarding the testimony of the seven witnesses, and adopting the version of a witness who two years before, and at the time of the accident, gave an entirely different version, and one which entirely exonerated the defendant from any negligence, found that the motorman was guilty of the grossest negligence.   The two versions are utterly irreconcilable.

In a case where the liability of the defendant depended upon the testimony of only one witness, and he was contradicted by several other disinterested witnesses, and, as in this case, gross negligence was charged, and the court refused to set the verdict aside, we said:

"The refusal to grant a new trial upon a verdict rendered upon such evidence is very close to an abuse of judicial discretion."   *Brassel* v. *Railway Co.*, 101 Mich. 5, 13 (59 N. W. 426, 428).

We also there held that it was impossible to read the record without coming to the conclusion that the jury utterly ignored the clear weight of the evidence in the case.

So, also, in *Whipple* v. *Railroad Co.*, 130 Mich. 460 (90 N. W. 287), we said:

"But if it should be held that it was not error to submit the case to the jury, their verdict was so palpably unjust and at variance with the great preponderance of evidence that the court should not have denied a motion for a new trial."

The language in those cases is especially applicable to this.

The judgment is reversed, and new trial ordered.

HOOKER, C. J., and MONTGOMERY, J., concurred with GRANT, J.

MOORE, J. I concur in the result reached by GRANT, J.