GREGORY v. DETROIT UNITED RAILWAY.

1. STREET RAILROADS—NEGLIGENCE—CONSTRUCTION OF TRACK—RAILS ABOVE STREET SURFACE—OVERTURNING OF VEHICLE—PRIOR ACCIDENTS.

In an action against a street-railway company for injuries from the overturning of plaintiff's cutter in striking the rails of defendant's track, which were alleged to have been negli-

gently left above the surface of the street, where the sole
question was the condition of the street, and whether its con-
dition was negligence, evidence of prior accidents of a similar
character at the same place was inadmissible.

2. SAME—INSTRUCTIONS—CREDIBILITY OF WITNESSES.

An instruction that if the jury believed that any witness for
defendant testified under a fear of losing his employment, or
a desire to avoid censure, or fear of offending, or a desire to
please his employer, such fact might be considered in deter-
mining the weight to be given to his testimony, was erro-
neous, when not coupled with any caution that the jury would
not be justified in drawing unfair inferences simply because
the witnesses were employés, and there was nothing in the
testimony itself or in the manner of the witnesses to justify
the conclusion that the testimony was tainted in the manner
suggested by the instruction.

3. SAME—EVIDENCE—CONDITION OF TRACK—SUFFICIENCY.

Where none of the witnesses for the plaintiff who testified as
to the condition of defendant's track where the accident
occurred had made such an examination as entitled their tes-
timony to much weight, but, on the contrary, eight for the
defendant testified to a careful examination, and that it was
in good condition—two of them being officers of the village in
which the accident occurred—a verdict for plaintiff was con-
trary to the clear weight of the evidence.

Error to Oakland; Smith, J. Submitted October 21,
1904. (Docket No. 78.) Decided December 7, 1904.

Case by Allen J. Gregory against the Detroit United
Railway for personal injuries. There was judgment for
plaintiff, and defendant brings error. Reversed.

Defendant's road runs through the village of Oxford.
The main street (Washington) extends north and south
through the village. The track is laid in the center of
the street. On reaching Oxford street the track turns by
a very sharp curve from Washington into Oxford street.
A guard rail is placed between the main or running rail
near the inner line of the curb, and fastened to the inner
rail by a cast-iron plug placed between the guard and

138 Mich.—24.

main rails. A bolt passes through both rails, and the plug securely fastens all together. The guard rail was 1½ inches from the main rail, and a half inch higher. This device answers the same purpose as grooved rails and curves in paved streets. The guard rail is necessary for the operation of the cars.

Plaintiff, on February 10, 1903, was riding in his cutter, and crossed the track where was located this guard rail. He claims that the runners of his cutter struck the inner or main rail, and that his cutter was thereby overturned and he was injured. This suit is brought to recover damages. The negligence charged consists in leaving the main rails above the surface of the street.

The plaintiff recovered verdict and judgment.

*Brennan, Donnelly & Van De Mark, Frank E. Jenkins,* and *James H. Lynch,* for appellant.

*Kinsman & Arnold,* for appellee.

GRANT, J. (*after stating the facts*). 1. The first assignment of error arises upon the admission of testimony. Evidence was received, under objections and exception, to show prior accidents of a similar character at this same place. Such testimony is only admissible to show notice and knowledge of the defects. *Grand Rapids, etc., R. Co.* v. *Huntley,* 38 Mich. 537; *Corcoran* v. *City of Detroit,* 95 Mich. 84; *Alberts* v. *Village of Vernon,* 96 Mich. 549.

Defendant's counsel upon the trial admitted that the condition of the rails and street at this point was the same as it had been from the 1st of December previous. The sole question, therefore, was the condition of the street, and whether its condition was negligence. Proof of prior accidents was immaterial, and would naturally tend to prejudice the defendant.

2. Error is assigned upon the following instruction:

"If you believe that any of the witnesses testified under a fear of losing his employment, or a desire to avoid

censure or a fear of offending, or a desire to please his employer, then such fact may be taken into consideration in determining the degree of weight which ought to be given to the testimony of such witnesses."

This charge could have been applicable to none other than the witnesses for the defendant. We find nothing in this record to justify this instruction. The language is identical in substance with that which was condemned by this court in *Marquette, etc., R. Co.* v. *Kirkwood,* 45 Mich. 51. In that case the court instructed the jury that, if they found it necessary to consider the testimony given by the agents and employés of the railroad company, they should bear in mind the interest they have in protecting their company and shielding themselves from blame. The reason for condemning such instructions is found on pages 53, 54, and we need not restate it here. The effect of such an instruction is apparent in this case, for the overwhelming weight of the evidence on the part of the employés of the defendant, who put down the planking at this place and who examined it, shows that the planking was flush with the main rails; and, if it was, it is conceded that there is no liability. Possibly counsel may not commit error in criticising witnesses upon this ground, but that is a very different thing from the judge calling attention to it in the language of this instruction. The effect of such an instruction, standing alone, is to permit the jury to set aside the testimony of the most reliable and truthful witnesses simply because they are employés. This instruction was not coupled with any caution that the jury would not be justified in drawing unfair inferences simply because they were employés. This instruction is very different from that given in *McDonell* v. *Boom Co.,* 71 Mich. 61, 66, and *Lovely* v. *Railroad Co.,* 137 Mich. 653.

In order to justify the above instruction, there must be something in the testimony itself or in the manner of the witness to justify the conclusion that the witness' testimony is tainted by fear of losing his employment, of of-

fending, or a desire to avoid censure, or to please his employer. In cases where corporations or individuals doing a large business are litigants, the great majority of the witnesses are employés, and, when instructions of this kind are deemed proper, they should be coupled with the caution above indicated.

In *Lovely* v. *Railroad Co.* this court cautioned the jury that "no inference unfair to men should be drawn because they are in the employ of the railroad company."

3. Defendant made a motion for a new trial on the ground that the verdict was contrary to the clear weight of the evidence. None of the witnesses for the plaintiff who testified as to whether there was any planking there, or as to its condition if there was, made such an examination as entitled their testimony to much weight. On the contrary, eight for the defendant testified to a careful examination, and that the planking was flush with the top of the rails and in good condition. Two of these witnesses were village officers. The case falls within *Cole* v. *Railway Co.*, 132 Mich. 122; *Brassel* v. *Railway Co.*, 101 Mich. 5; *Whipple* v. *Railroad Co.*, 130 Mich. 460. The court should have granted the motion.

Judgment reversed, and new trial ordered.

The other Justices concurred.