BERNARD *v.* GRAND RAPIDS PAPER BOX CO.

1. EVIDENCE—MASTER AND SERVANT—RES GESTÆ.
   It was error to admit in evidence as a part of the *res gestæ* a reply of defendant's foreman to a question of plaintiff, more than fifteen minutes after the injury, tending to show the foreman's purpose, in starting the machine which caused the accident, was to test it, since the statement was neither spontaneous nor a part of the act done, but amounted merely to narrative of a past transaction.[1]

2. SAME—NEW TRIAL—WEIGHT OF EVIDENCE.
   *Held*, that the verdict should have been set aside as against the great weight of the evidence.

Error to Kent; McDonald, J. Submitted June 23, 1911. (Docket No. 47.) Decided May 31, 1912.

Case by Henry Bernard against the Grand Rapids Paper Box Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Bundy, Travis & Merrick*, for appellant.

*Carroll, Kirwin & Hollway*, for appellee.

McALVAY, J. This case is before this court for review upon writ of error by defendant from a judgment against it in favor of plaintiff, recovered for personal injuries, claimed to have been caused on account of the negligence of defendant. Defendant company operated a paper box manufactory in Grand Rapids. Plaintiff was first employed by defendant in August, 1908, just after it had met with a fire loss, which necessitated moving temporarily into other quarters. He was employed as a millwright and carpenter to assist in installing machines

---

[1] As to how near the main transaction declarations must be made in order to constitute part of the *res gestæ*, see note in 19 L. R. A. 733.

moved over from the building where the fire occurred to another building, and continued at such work for about four weeks. In November following, when defendant's building was ready for occupancy, he was again employed by defendant and worked as a millwright in installing machines, fitting up shafting, pulleys, hangers, etc., in defendant's building. The work was of the same kind as that done by him when first employed. As fast as machines were set up by him and ready for operation, they were put in use in the regular work of the factory; and his work continued in the same room in which machines were in operation until December 18, 1908, when the injury complained of occurred. Plaintiff on that day, and the day previous, had worked at putting in the shafting, setting up and getting ready for operation a dovetailing machine. He was working under the direction of Mr. Vos, who had charge over him, and who told him where to set this machine. He had put up most, if not all, of the shafting in that room. He fastened the dovetailing machine to the floor with but two lag screws, which, passing through holes in the bottom of the frame, were screwed into the floor. This machine is connected with a countershaft on the floor. There is a main shaft along the ceiling to which the countershaft, upon which there is a loose pulley and a drive pulley, is connected with the machine by a belt. To start this machine, the belt is shifted from the loose pulley to the drive pulley.

Plaintiff, considering he had completed his work in setting up this machine, went down to the next floor and asked Mr. Vos to come and see if it was right. At this time, the belt from the main shaft to the countershaft was on the loose pulley, and the belts from the countershaft to the machine were on. The top part of the machine, which holds the material to be dovetailed, and is operated by pushing it over the knives, was not in place. These knives were fastened to an arbor, at each end of which is a pulley, connected with a countershaft by belts, and when power is applied the knives revolve in plain view in the

open throat, when the top is removed. Mr. Vos went with plaintiff as requested. At that time, the machine was not running.

What occurred after they came to the machine is in dispute. Plaintiff's version is that Vos looked at the machine, and, putting a straight edge alongside of the pulley, said it was all right; that Vos was standing on the side of the machine near the countershaft and the loose pulley, and plaintiff was on the opposite side of the machine; that when Vos said it was all right plaintiff turned and picked up a chisel in his right hand, and was passing the machine; that he heard the loud buzzing of the machine starting, and that is the last he recollects. He was just across the machine from Vos, looking at him, and saw him make no motion to start it. He claims the chisel caught in the knives, and his arm was drawn into them. He testifies that he did not start the machine, and that it had not been started before on that morning; that he had never started the machine, and had never started any machine, nor seen any started. No other eyewitness was produced by plaintiff.

The testimony of Mr. Vos contradicts the testimony of plaintiff. He says plaintiff came to him after he had installed this machine, stating that the boxes were running hot, and requested him to come up and see what the trouble was. He went upstairs with him and felt of the boxes. They were warm, which indicated that the machine had been running. He told plaintiff that they were screwed down too tight, and at his request plaintiff got a wrench and loosened them. He then told plaintiff to start the machine to see how it would run. Plaintiff did as directed, and the machine started. It shook considerably, and Vos asked if he had put all the lag screws in. Plaintiff replied that he had not; and then he picked up an oil can and oiled the side on which he stood, and reached across the knives to oil the box on the other side. In doing so, the knives caught his shirt sleeve and dragged his arm in.

The theory of the plaintiff was that Vos started the machine for the purpose of testing it; and to establish this he was permitted, over objection, to testify to a statement made by Vos after the accident, when in the ambulance with him on the way to the hospital. This testimony was offered and admitted as a part of the *res gestœ*.

At the close of the plaintiff's case, counsel for defendant moved to strike out the conversation with Mr. Vos in the ambulance on the way to the hospital, on the ground that it was not a part of the *res gestœ*. A motion was also made for a directed verdict in favor of defendant, for the reason that no negligence chargeable to defendant had been shown. Both motions were denied and exceptions taken.

On the part of the defendant, much testimony was introduced for the purpose of showing that the accident was caused by the negligence of plaintiff. This testimony was given by eyewitnesses and those to whom plaintiff had stated the cause of his injury. A motion for a new trial was made, based upon the refusal to give certain requests to charge, the improper admission of testimony, particularly the claimed conversation with Mr. Vos in the ambulance, and also that the verdict was against the weight of the evidence. This motion was denied and exceptions in writing taken by defendant.

The errors assigned cover the questions raised upon the motion for a new trial. This opinion will be confined to the principal errors relied on by defendant.

The court, in denying a motion for a new trial, relative to the conversation with Vos in the ambulance, held that it was part of the *res gestœ*. It has been settled, upon the great weight of the authorities, that, to make such statements admissible as *res gestœ*, they must be spontaneous, made at or near the time and place of the accident, and so closely connected with the occurrence as to be evoked and prompted by it.

"On the other hand, narrations not the natural and

spontaneous outgrowth of the occurrence, and so far separated from the act they are alleged to characterize that they are not a part of it, and so connected with it as to receive credit from it, are purely narratives of a transaction already past." *White* v. *City of Marquette,* 140 Mich. 310, at page 314 (103 N. W. 698), and authorities cited.

The plaintiff, immediately after the accident, was taken to another part of the factory, where his arm was temporarily dressed, and he waited for an ambulance. He said that he was unconscious part of the time. Fifteen or 20 minutes after the accident, the ambulance came, and Vos accompanied plaintiff to the hospital. On the way, as plaintiff testifies, the following occurred:

"*Q.* Did Peter Vos say anything to you, after your injury, while in the ambulance, while on the way to the hospital?

"*Mr. Bundy:* Wait a moment; I object to that as in- competent and immaterial.

"*Mr. Kirwin:* It is offered as part of the *res gestœ.* (Objection overruled and exception taken.)

"*A.* I said to Mr. Vos, 'What did you start that machine for?' Says he: 'Henry, I started it with the intention of testing it out; but I should not have done it without putting a top on.' "

This was not a voluntary, spontaneous statement. According to plaintiff's testimony, this statement resulted only from and was in answer to a direct question asked by him. It was drawn out by the direct interrogation of plaintiff. It was not the statement of an injured person, who had been for a time unconscious. The condition of the plaintiff in the instant case has no relation to the statement of Mr. Vos. It was made after the occurrence and away from the place. It cannot be said to have been a part of the act it is claimed to characterize, and was therefore a narrative of a transaction already past and completed, and was hearsay. This statement, made by its agent under the circumstances already narrated, was not competent for the purpose of fixing liability upon defendant for plaintiff's injury.

The following excerpts from opinions of this court are in point:

"The statements of an agent, when made in the course of his employment, and while engaged in the business of his principal, are binding upon the principal, because they are part of the *res gestæ;* but no agent is employed to make admissions outside of his employment.   *   *   *   In the case of *Vicksburg & Meridian Railroad* v. *O'Brien*, 119 U. S. 106 [7 Sup. Ct. 121], the court, quoting Mr. Justice Strong [*Northwestern Packet Co.* v. *Clough*], 20 Wall. 541, states the principle of the rule to be that, 'the agent to do the act is not authorized to narrate what he had done and how he had done it, and his declaration is no part of the *res gestæ.*'" *Hall* v. *Murdock*, 119 Mich. 390 (78 N. W. 329).

"We think there was no error in excluding this testimony.   The injury had already occurred.   It became a matter of narration, and was not even narration of the incident, but of the cause which led to the incident.   We think the question was within the ruling of this court in *Andrews* v. *Mining Co.*, 114 Mich. 375 [72 N. W. 242]; *Michigan Cent. R. Co.* v. *Coleman*, 28 Mich. 440." *Dompier* v. *Lewis*, 131 Mich. 144 (91 N. W. 152).

The court erred in admitting plaintiff's testimony of the statement of Mr. Vos.

The other contention argued on the motion for a new trial was that the verdict of the jury was against the weight of the evidence.   Plaintiff was the only witness of the accident who testified in his behalf.   Another witness, named Heth, who was an electrician, and had, on the day previous, installed the motor which furnished power to the shaft by which this dovetailing and other machines were operated, who, just before the accident was near this machine, was called as a witness by plaintiff.   He did not see any part of the accident, having gone a short distance beyond a partition, which cut off all view of the plaintiff and his machine.   He testified that plaintiff was hurt a very short time after he got out of sight.   None of his testimony tends to prove how the accident occurred.

It related to his recollection as to whether this machine was running that morning before the accident.

On the part of defendant, plaintiff was disputed by three witnesses, who saw the accident or the circumstances immediately preceding and following it. These witnesses were Vos, the foreman, whose testimony has already been given, and two men working in the same room on machines not far from plaintiff. One of them saw the accident, and testifies that plaintiff's sleeve caught in the knives, while he was reaching across to oil the arbor on the other side. The other saw plaintiff with an oil can in his hand oiling on the side near him, and then reach over the knives to oil on the other side. His attention was then taken by his own work, and he did not see his arm drawn into the machine. He was also disputed by the testimony of eight witnesses as to direct and positive statements made by plaintiff to them or in their presence, to the effect that the accident occurred in the manner claimed by defendant, and that it was his own fault. Two other witnesses, who worked in this factory, testified that plaintiff quite frequently used other machines, and they had seen him start and stop them. One of them, who had worked on this machine, had seen him start and stop it. A witness, who was employed by a firm of sawmakers which sharpened the knives for the machines in defendant's factory, testified that he sharpened the knives on this machine a few days after the accident, and that they were only dull. The teeth were sound, and had no marks or nicks on them. If metal had struck these teeth, they would have been broken or bent. Five of these witnesses were not employés of defendant. They were disinterested witnesses and not impeached. They were ordinary workingmen of the same class as plaintiff. Of all these witnesses, Vos alone can be said to have been in any way an interested witness.

The plaintiff denied this testimony; and his wife and daughter denied that a certain statement by plaintiff, detailed by one of the witnesses, did occur. The eyewit-

nesses were not disputed, except by plaintiff; and none of them was impeached.

Under our practice, this court must exercise its judgment as to the weight of the evidence in the instant case. We are satisfied upon this record that the verdict was against the clear weight of the evidence. We do not see how any other conclusion is possible. The instant case is of that class occasionally before the courts where, for some reason, not always apparent, justice has miscarried, and a verdict has been found against the weight of the evidence. *Brassel* v. *Railway Co.*, 101 Mich. 5 (59 N. W. 426); *Gregory* v. *Railway*, 138 Mich. 368 (101 N. W. 546); *Crowe* v. *Railroad Co.*, 142 Mich. 696 (106 N. W. 395).

We do not think that it is necessary to consider any other questions discussed in the briefs.

The judgment is reversed, and a new trial granted.

MOORE, C. J., and BROOKE, BLAIR, and STONE, JJ., concurred.