### DAVIS *v.* BUSS MACHINE WORKS.

1. APPEAL AND ERROR—SAVING QUESTIONS FOR REVIEW—EXCEPTIONS—SUFFICIENCY.

   Where counsel's exception to a ruling of the court left it in doubt whether the exception covered the court's refusal to strike out testimony as to damages, or its ruling on a proposed amendment to the declaration, the verdict being small in amount, prejudicial error was not shown for refusing to eliminate the testimony which also might have been admissible under an allowable amendment denied by the trial court.

2. TRIAL—EXAMINATION—WITNESSES.

   The matter of permitting leading questions on the cross-examination of a witness, called by one party and afterwards recalled by the other, is largely discretionary.

3. AMENDMENT—DECLARATION—VARIANCE.

   In permitting plaintiff to amend his declaration as to the side on which he was injured, the court exercised a proper discretion.

4. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—RAILING.

   Whether plaintiff, a night watchman, was chargeable with contributory negligence in falling from a ladder or stair-

way not provided with a handrail, because of plaintiff's knowledge or notice of the condition and familiarity with it during two months' previous use of the stairway, was a question for the jury; as was the issue whether the absence of a railing was the cause of his injury, it appearing that he might have saved himself from falling if a handrail had been present.[1]

5. SAME—STAIRWAY—LADDER—STATUTES.
   Under the provisions of Act No. 285, Pub. Acts 1909 (2 How. Stat. [2d Ed.] § 4022), it is the duty of the master to provide stairways with substantial handrails for the use of servants and the duty is not performed by providing a ladder without handrails, although employers are not required to construct stairways to unused or unfrequented parts of the building or in places where the construction of a stairway is impracticable.

Error to Ottawa; Cross, J. Submitted January 16, 1913. (Docket No. 134.) Decided April 8, 1913.

Case by Benajah M. Davis against the Buss Machine Works for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Diekema, Kollen & Ten Cate*, for appellant.

*Miles & Van Eyck* and *Corie C. Coburn*, for appellee.

STONE, J. This suit was brought by plaintiff to recover damages alleged to have been suffered by defendant's neglect to comply with the statute requiring stairways with substantial handrails in manufacturing establishments, as required by section 14, Act No. 285, Public Acts of 1909 (2 How. Stat. [2d Ed.] § 4022). The defendant was a corporation operating

---

[1] On the question of contributory negligence as a defense against violation of statutory duty where statute excludes defense of assumed risk, see note in 13 L. R. A. (N. S.) 1152.

The decisions on the question of a servant's assumption of risk of master's breach of statutory duty are presented in notes in 6 L. R. A. (N. S.) 981; 19 L. R. A. (N. S.) 646; 22 L. R. A. (N. S.) 634; 33 L. R. A. (N. S.) 646; and 42 L. R. A. (N. S.) 1229.

a business consisting of the manufacture of wood working machinery in a two-story building in the city of Holland.

The case has been here before (169 Mich. 498 [135 N. W. 303]), and we then considered the question of the sufficiency of the declaration, holding that it stated a cause of action. While the declaration was somewhat criticised, yet Justice STEERE, speaking for the court, said:

"Nevertheless, it is stated in the declaration that plaintiff was employed in a manufacturing establishment; that there was a second story connected with the first story of this building by a narrow stairway, not having any handrail on either side; that, under his instructions, it became the duty of the plaintiff to pass up and down said stairway, and while so doing, in the performance of his duties in the line of his employment, he was hurt, owing to the absence of such protection, and while exercising due care and caution on his part.

"These allegations state a violation of a statutory duty which defendant could not legally contract to violate. Plaintiff did not assume the risk of such violation. It is alleged he was using the stairway in a manufacturing establishment under orders of his employers, in the line of his duties, was guilty of no fault or negligence which contributed to the accident, but fell and was injured owing to the statutory negligence stated. We think the declaration, taken as a whole, stated a cause of action."

Thereafter the defendant pleaded the general issue, and the case was tried and submitted to a jury, resulting in a verdict and judgment for the plaintiff in the sum of $275. Upon the trial the plaintiff gave testimony to the effect: That he was 60 years old. That he had been in the employ of the defendant as night watchman two or three months prior to the injury. That defendant's business consisted of manufacturing wood working machinery. That the establishment consisted of a two-story brick building,

the second story being near the center. That in the first story there were machinery, lathes, and planers in one part and a molding room in another. It was run by electricity, but they had a boiler for heating the factory. In the second story they put their coke and iron, to melt for their castings, and during the day employed men there. That there was a narrow stairway used as a means of ascent and descent from the first floor to the second floor. That this stairway was in two sections, reaching from the ground up on to the boiler, where there was a landing, and then they went up another section. That the stairs were about 14 feet in length, and they were there for the employees to go into the second story. That when he went to work there Mr. Fairbanks, the superintendent, showed him around, and explained his duties which were, among other things, to go up the stairs into the second story every two hours and with a key kept there register the watchman's clock. That he had to take the key and, putting it into the clock, make an imprint on the dial of the clock. That Mr. Fairbanks instructed him to go up those stairs to the second story, and that there was no other way to go up at night. That Mr. Fairbanks went up the stairs with him and explained his duties.

That witness was employed there on the night of November 5, 1909, and while making his rounds there, as usual, was injured. He testified:

"I was making my round, and on my third round I was climbing those stairs, there was no handrail for me to get a hold of, and I fell. In climbing those stairs I had my lantern on my arm and stepped up. I had this hand to save myself with, to protect myself. I stepped up on one step and brought the other foot up to it, since I can't step up one step one foot ahead of the other, like any other man. I have to bring up one foot and then the other onto that section, and when I got onto the landing, I stepped onto the third step. Just as I went to step up with this foot, I lost

my balance and had no handrail to take hold of, and I fell backwards. * * * I was just as careful as a man could be, as I knew the condition of the stairway, and I think, in fact, more careful than an ordinary man would be.

"*Q.* You say that you fell because there was no handrail there?

"*A.* Yes, sir. After I fell, as soon as I was able I got up, felt my way along, until I came to the electric light in front of the boiler, turned it on and worked my way into the office and sat down. * * * I broke two ribs off from my spinal column, and lacerated the muscles in my side, and I was in awful pain; these pains continuing all winter and continuing yet. I have these pains now. A doctor was called shortly after the injury and he attended me. He put me in a jacket and examined me and found those ribs broken. I am still using liniments by his orders, his prescription, to relieve that injury and those pains. At the time of the injury my income was $14 a week, consisting of $9 paid me for night watching and the balance from my shoe shop, which netted me $5 a week. I was confined to the house, unable to do anything, for three months. I lost my shoe shop and had to give it up. * * * That stairway did not have any railing."

At this point the defendant's counsel moved that the testimony that plaintiff had been engaged in the shoe business, and was earning $5 a week, be stricken out as not covered by the declaration. Whereupon plaintiff's counsel asked to amend the declaration as it only stated that plaintiff was earning $9 a week for night watching for the defendant. Plaintiff's counsel then asked leave to amend the declaration in two respects, one as covering the extra wage, and the other as to striking out the word "cupola" wherever it is mentioned in the declaration. After some discussion the court overruled the plaintiff's motion to amend the declaration so far as it related to the shoe shop matter; but did not strike out the testimony already entered on that matter, and allowed plaintiff

175 MICH.—5.

to amend the declaration by striking out the word "cupola," to which defendant's counsel excepted. The court then said:

"If they desire a continuance on the ground that they are not able to meet the amendment here, I presume it is up to the court to grant it."

Whereupon the counsel for defendant replied that they would not ask for additional time.

The plaintiff was cross-examined at great length, and he testified, among other things, that the main building of the defendant was probably 75 or 100 by 200 feet; that it was all a one-story building except the space above the boilers, which was a room about 20 feet square, where they stored their iron and coke; that this was the second story spoken of in the declaration; that the cupola was simply the furnace, or casting place in the corner; that the room was a large room used for storing the iron and coke used in the furnace or cupola; that there was an elevator in one corner of that room which they used in the daytime to get their material up, and he supposed the men went up there too, when they took up the iron and coke; he had never seen any man go up there, because he had not been there in the daytime. He had never seen men employed on the second floor go up on the ladder or stairway. He described the ladder or stairway at great length, and the position which he was in on the second ladder or stairway when he fell. He testified that he had an artificial limb that went up to his knee, and that this rendered it more difficult for him in ascending a stairway or ladder. He testified that before the injury his health was good—that he had no pains or aches at all.

A physician testified that he attended the plaintiff and found him suffering from two fractured ribs on the right side, two or three inches from the spinal column, and some evidence of bruising of the back, over the point where the fracture was. On cross-

examination he testified that the ribs have not pene-
trated the lungs in any way, nor the heart, nor any
of the vital organs; that it was just an ordinary case
of the breaking of a couple of ribs; that he called on
the plaintiff twice afterwards, and took off the ad-
hesive strips, and found that the ribs were firm, and
had united, and he could not tell that plaintiff was
not then perfectly normal; that this was in November,
and witness did not see plaintiff again until January,
when he came to the office and complained that he had
pain in his back, where the ribs were, and witness ap-
plied some liniment.

Other witnesses—employees—testified that they
went up and down sometimes on the elevator, and
when that was busy they would go up and down the
stairway or ladder.

At the close of the plaintiff's testimony defendant's
counsel moved the court to instruct the jury to bring
in a verdict for defendant, on four grounds:

(1) The insufficiency of the declaration, in not stat-
ing the duty of defendant, and the breach of that duty.

(2) That the declaration alleged that the plaintiff
broke his ribs on the left side, and the uncontradicted
evidence was to the effect that the ribs were broken
on the right side.

(3) That the testimony showed that plaintiff was
guilty of contributory negligence.

(4) That it appeared by the uncontradicted testi-
mony of the plaintiff that when he fell his head was
above the floor, and if it had not been for a partition
against which coal was shoveled, he could have placed
his hand on the floor, and a railing would have been
of no use in his then position.

At this point, upon motion of plaintiff's counsel,
they were permitted to amend the declaration, so as
to allege that the ribs were broken upon plaintiff's
right side, to correspond with the evidence, and the
motion of defendant was overruled, to which defend-
ant's counsel excepted.

Evidence was introduced by the defendant tending to show that the so-called stairway was a ladder, and that it would be impracticable to build a stairway in the building; that the second story was not used except for smelting purposes; and that it was the custom of the men to use the elevator during the day. The sales manager, among other things, testified as follows:

"Q. So in order to get up to the top here to this room above, when the elevator was busy, there was constructed this ladder up to the boiler, and then from the boiler up to the top?

"A. No, sir; that was constructed there to be used when the elevator couldn't be used, when there was no power."

Alva J. Fairbanks, the superintendent of the defendant, when the plaintiff was employed, testified as to the employment as follows:

"I employed him as night watchman. When he came for the job I asked him if he thought himself competent to do the work, and he replied that he was perfectly willing and able to do it. I noticed his physical condition at that time. I noticed he had one wooden leg or stump foot, and I knew that it would take some muscle and some walking to sweep the floors of the shop, the iron being heavy on the floors, and also climbing these stairs which he had to do every night, and therefore I asked him if he thought he was able to do it, and he said he was. I then showed him up and down these stairs."

On cross-examination this witness testified:

"That stairway was placed there to get at the loft, when there was no power on to run the elevator, and it was used by employees for that purpose; but it was not regularly used for that. I never remember having six men at work up there, nor five. We always figured on one man doing the cupola work. He was up there nearly all day; but when I took Mr. Davis around, that is the way I showed him to go up there, and that was the only way you could get up there to

punch the clock, with his key. I told him he must do that every two hours. This upper arrangement is stationary; that is, tacked to the wall to hold it up there.

"*Q.* Wouldn't it be possible in some other part of this building to manufacture a steel stairway with a handrail so that they could get up there into this second story?

"*A.* It would be possible to do anything, you can do anything, whether it would do any good to make it that way or not.

"*Q.* They could have taken this out entirely and put in another stairway there, made it of steel with a handrail, couldn't they, so they could get up into that second story?

"*A.* They certainly could."

At the close of the testimony defendant renewed its motion to have a verdict directed in its favor and urged the following additional reasons: That the testimony shows it would be unreasonable to apply the statute to this condition and that the construction of a stairway there would be impracticable; and, secondly, that the statute invoked is not applicable, because the stairway was not regularly frequented by the employees, but was only to be used when the elevator was not in running order—which motion was overruled and defendant excepted.

The following requests of defendant to charge were refused:

(1) "The declaration filed by the plaintiff alleges, among other things, that in November, 1909, plaintiff was employed as a night watchman in defendant's manufacturing establishment located in Holland, and that in said factory there was a second story connected with the first story by a narrow stairway up and down, which stairway it was the duty of the plaintiff to pass in performing his duties in the line of his employment; that it was the duty of the defendant to furnish the plaintiff with a reasonably safe stairway as a means of passing from one floor to the other, and to keep the said stairway in a reasonably safe condition to perform his duties as a night watchman;

and that it was also its duty to equip said stairway with a substantial handrailing, as required by the statutes of the State, in order to make the stairway reasonably safe. And the declaration, after averring defendant's duty in this respect, alleges negligence on the part of the defendant in failing to provide said stairway with a substantial handrailing as required by statute, and in not providing said stairway with any railing or other protection of any kind. The defendant contends that there was no stairway at all connecting the first and second story of its building, but that two short ladders were used for this purpose, up and down which plaintiff was requested to go in the performance of his duties, and that the statutes of the State do not require handrails on ladders. I charge you that the first and second stories of defendant's manufacturing establishment were connected by ladders and not by a stairway, and that defendant was not required by statute to equip these ladders with handrails."

(2) "A ladder is not a stairway and a stairway is not a ladder. A stairway has various technical parts consisting of risers, treads, nosings, fliers, and winders. It is stationary. A ladder is in the nature of a tool, is a frame consisting only of two parts, the sides and the cross steps. One distinguishing feature between a stairway and a ladder is that a ladder has treads but no risers. The uncontradicted evidence in this case shows that the instrument from which plaintiff fell was a ladder and not a stairway."

(10) "I charge you, gentlemen of the jury, that if you find that Mr. Davis was ascending this stairway, or ladder, on the night of November 5, 1909, notwithstanding his physical deficiency, without using either of his hands in taking hold of its treads or steps or its sides, then he is guilty of contributory negligence, and your verdict must be no cause of action."

There was a motion for a new trial based on the grounds that the verdict was contrary to law and the evidence; that the jury ignored the charge and agreed on a compromise verdict outside of the evidence; that the verdict was unjust; that the uncontradicted evi-

dence shows that plaintiff was guilty of contributory negligence; that if defendant was in any manner negligent it was by reason of the partition built at the head of the stairs, and the accident happened by reason of said partition, and not by reason of the want of railings; that the court erred in allowing plaintiff to amend his declaration after all his proofs had been submitted; that the evidence shows that the construction of the stairway with suitable handrails in said engine-room was impracticable; that the great preponderance of the evidence shows that the means used consisted of two ladders and not two stairways. The motion was denied, the court assigning reasons therefor in writing, to which defendant excepted.

The defendant has brought the case here, and there are 40 assignments of error. These assignments have been classified and condensed into the questions whether there was prejudicial error:

(a) In the admission of testimony.

(b) In the court's refusal to instruct a verdict in favor of defendant at the close of plaintiff's testimony.

(c) In the court's refusal to charge the jury as requested by the defendant.

(d) In the court's denying defendant's motion for a new trial.

Taking up the questions in the order named, we will consider:

(a) The point as to the introduction of testimony relating to the shoe shop matter. Plaintiff testified relative to it. Defendant moved to strike out the testimony because not covered by the declaration. Plaintiff moved to amend the declaration to include this matter, and also moved to amend the declaration so as to strike out the word "cupola." After some discussion the court refused plaintiff's motion to amend 'relative to the shoe shop matter and did not strike out the testimony, but did permit the other amendment, to which defendant's counsel excepted. A

reading of the record leaves us in doubt whether the court understood that the exception covered the refusal to strike out this testimony. Defendant's counsel did not again allude to the matter, by any request to charge, or otherwise. The court might well have granted the amendment, as it related to the earning ability of the plaintiff. Under the circumstances, and in view of the size of the verdict, we must decline to reverse the case upon this ground.

The witness M. Everett Dick, a sales manager of defendant for many years, was called as a witness by the plaintiff without any announcement whether he was called under the statute or not. Later he was recalled by the defendant and examined. When plaintiff's counsel attempted to cross-examine this witness, some discussion arose as to whose witness he was. In view of what we have said in *Johnson* v. *Carbide Co.*, 169 Mich. 651-659 (135 N. W. 1069), we do not think the court erred in permitting a leading question to be answered. The matter was one largely of discretion.

(*b*) It is next urged that the court should have granted defendant's motion, and should have instructed the jury to bring in a verdict for defendant, at the close of plaintiff's testimony. This was asked upon the four grounds hereinbefore set forth. As to the sufficiency of the declaration, we have already held that it was sufficient to warrant a recovery for violation of the statutory duty. As to the variance between the declaration and the evidence relating to whether plaintiff's ribs were broken upon the right or left side, we are of the opinion that the court properly permitted the declaration to be amended. *Brassel* v. *Railway Co.*, 101 Mich. 5 (59 N. W. 426); *Edwards* v. *Village of Three Rivers*, 102 Mich. 153 (60 N. W. 454); *Grattan* v. *Village of Williamston*, 116 Mich. 462 (74 N. W. 668).

We cannot agree with defendant's claim that the

court erred in not directing a verdict on the ground that plaintiff was guilty of contributory negligence. We think that was a question for the jury. Plaintiff had used the stairway or ladder for a number of months without injury, and was aware of its condition; but it does not follow that that fact would make its continued use contributory negligence, as matter of law. Neither can we say that the cause of the injury was not the failure to provide a railing. Had there been a railing present plaintiff perhaps might have saved himself from injury even while falling. This was for the jury to say under the evidence.

(c) We are of the opinion that there was no error in refusing to give defendant's first and second requests to charge. Counsel for defendant claim that if the instrumentality used was a ladder and not a stairway the plaintiff cannot recover, and the trial court seems to have been of the same opinion. The declaration contains this averment:

"Plaintiff further avers that it then and there became and was the duty of said defendant to provide and furnish the said plaintiff with a reasonably safe stairway, as a means of passage from one floor to the other, and to keep the said stairway in a reasonably safe condition, as a safe place to perform his said duties as night watchman, in accordance with the provisions of law of said State;  *  *  *  that it became the duty of the said defendant to provide and equip said stairway with a substantial handrailing, as required by section 7 of Act No. 113 of the Public Acts of 1901 of said State, in order to make the same reasonably safe."

The statute really in force was section 14 of Act No. 285, Public Acts of 1909. But upon this subject the language is the same in both statutes. We understand this to be a positive duty that stairways with substantial handrails shall be provided in manufacturing establishments, and that it is no defense to show that there has been no attempt to comply with

the statute. Of course, as we said, when the case was here before:

"It would be absurd to apply the statute to a manufacturing establishment of only one story where there was no occasion for the employees to go up and down in the usual course of their employment. It would be unreasonable to apply it to every means of ascent to unfrequented parts of the building where the construction of a stairway was impracticable, and, though not regularly frequented by the employees, nevertheless means of access were desirable on rare occasions, as in the case of fire, or some special or unusual circumstance. We think it was the legislative intent to require stairways, with the safeguards specified, in all cases where means of ascent and descent are needed or desired, and are used by employees at their work in the line of their employment."

It is very evident from the charge and verdict that the jury found that this building came within the purview of the statute, and that the defendant had neglected this statutory duty.

There was no error in refusing to give defendant's tenth request to charge, for the reasons already given.

(d) We have examined the questions involved in the motion for a new trial, and are of opinion that the court did not err in refusing the motion.

Finding no reversible error in the record, the judgment of the circuit court is affirmed.

STEERE, C. J., and MOORE, McALVAY, BROOKE, KUHN, OSTRANDER, and BIRD, JJ., concurred.